```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/02/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
 :
THE TRAVELERS PROPERTY CASUALTY :
COMPANY OF AMERICA, :
 :
                    Plaintiff, :   21-cv-4748 (LJL)
 :
           -v- :   OPINION AND ORDER
 :
AXIS INSURANCE COMPANY, :
 :
                    Defendant. :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff The Travelers Property Casualty Company of America ("Travelers" or "Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment on its complaint against Defendant Axis Insurance Company ("Axis" or "Defendant"). *See* Dkt. No. 21.

For the following reasons, the motion for summary judgment is granted.

## BACKGROUND

The following facts are undisputed for purposes of summary judgment except where otherwise indicated.

**I.     The Policies**

Travelers issued Commercial General Liability and Employee Benefits coverage bearing policy number VTC2J-CO-3612A411-TIL-18 to Sciame Constructions LLC ("Sciame"), providing coverage for bodily injury that is caused by accident taking place during the policy period of June 1, 2018 to June 1, 2019 ("Travelers Policy"). Dkt. No. 23 ¶¶ 1–2.[1] The Travelers

---

[1] For convenience, the Court will cite only to Dkt. No. 23, which is Plaintiff's Rule 56.1 statement, where Defendant responded that the statement was undisputed in its Rule 56.1

Policy contains an "other insurance" provision providing that coverage under the Travelers Policy is "excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy." *Id.* ¶ 3.

Axis is the issuer of insurance bearing the policy number P-001-000001029-02 to Long Island Concrete, Inc. for the policy period of March 7, 2018 to March 7, 2019 (the "Axis Policy"). *Id.* ¶ 4. The Axis Policy identifies Regulator Construction Corp. ("Regulator") as a named insured. *Id.* ¶ 5. Subject to certain terms and conditions, the Axis Policy provides coverage for bodily injury that is caused by accident and takes place during the policy period. *Id.* ¶ 6. By endorsement (CG 20 10 04 13), the Axis Policy provides in relevant part as follows:

> ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART SCHEDULE
>
> **Name of Additional Insured Person(s) Or Organization(s):**
>
> Any person or organization where the Named Insured has agreed in a written contract or agreement to name as an additional insured provided that the contract or agreement was executed prior to the loss or occurrence.
>
> **Location(s) Of Covered Operation(s):**
>
> All locations at which the Named Insured is performing ongoing operations.
>
> A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
>   1. Your acts or omissions; or

---

statement, Dkt. No. 29. The Court will cite to both Dkt. No. 23 and Dkt. No. 29 where Defendant disputed Plaintiff's Rule 56.1 statement.

      2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

*Id.* ¶ 7. The Axis Policy also provides, with respect to "other insurance," in relevant part that:

    a. **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

    b. **Excess Insurance**

        1) This insurance is excess over:

            a) Any of the other insurance, whether primary, excess, or contingent or on any other basis:

                i. That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

                ii. That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

                iii. That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

                iv. If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

            b) Any other primary insurance available to you [Regulator] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

*Id.* ¶ 8. The Axis Policy also contains an endorsement, PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION (form CG 20 01 04 13), which states that:

> The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:
>
> **Primary and Noncontributory Insurance**
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy, provided that:
>
> (1) The additional insured is a Named Insured under such other insurance; and
>
> (2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

*Id.* ¶ 9.

## II.   The Construction Agreement Between Sciame and Regulator

On or about September 18, 2017, Sciame, as general contractor, entered into a Construction Agreement with Regulator (the "Construction Agreement"), pursuant to which Regulator was to perform work for a construction project located at 17 Jane Street, New York, New York (the "Project"). *Id.* ¶ 10. Pursuant to the Construction Agreement, Regulator agreed with Sciame that Regulator would procure commercial general liability insurance "to provide defense and indemnification to Contractor [defined as Sciame], Owner [defined as JCM Jane Street Associates ("JCM")], and the other Indemnitees (who shall be designated as additional insureds under the pertinent policy or policies of insurance on a primary and non-contributory basis)." *Id.* ¶ 11.

Exhibit H to the Construction Agreement contains its Subcontractor Insurance Requirements, which include a sample certificate of insurance listing various entities as

4

additional insureds for general liability coverage purposes, including Sciame and JCM. *Id.* ¶ 12.

Exhibit A to the Construction Agreement also specifies that:

> As respects General Liability . . . policies have been endorsed and stipulate that this insurance is primary and non-contributory, for all Additional Insured's [sic]; and any other insurance or self-insurance maintained by **Sciame Construction, LLC, and any other Additional Insured et al**, shall be excess only and shall not be called upon to contribute with this insurance.

*Id.* ¶ 13.

### III.     The Underlying Action

On or about December 19, 2018, Damian T. Herrera-Martinez ("Claimant") brought suit against Sciame and JCM in New York State Supreme Court alleging claims of negligence and violations of the New York Labor Law by Sciame and JMC, their contractors, and their subcontractors in connection with an October 22, 2018 incident in which Claimant was injured while he was working at the Project site (the "Underlying Action"). *Id.* ¶¶ 14, 18; Dkt. No. 29 ¶ 18. Claimant alleged that on the day of his injury, he was engaged in construction and renovation work at the Project site and was employed by Structural Concrete, Inc. ("Structural Concrete"), a subcontractor of Regulator. Dkt. No. 23 ¶ 17. He alleged that he sustained a fall from a height while performing his job duties at the Project site, sustaining serious and severe injuries. *Id.* ¶ 15; Dkt. No. 29 ¶ 15; Dkt. No. 24-13 ¶ 8. He alleged that the accident was caused by the negligence, carelessness, and violations of New York Labor Law by JCM, its agents, servants, employees, and/or licensees, including contractors and subcontractors performing work at the Project site, and by these individuals' failure to provide him with a safe place to work and proper safety devices and fall protection. Dkt. No. 23 ¶ 18; Dkt. No. 29 ¶ 18; Dkt. No. 24-13 ¶ 9. He also alleged that the accident was caused by the negligence, carelessness, and violations of New York Labor Law by Sciame and its contractors and subcontractors. Dkt. No. 23 ¶ 18; Dkt.

No. 29 ¶ 18; Dkt. No. 24-13 ¶ 25. In particular, Paragraph 9 of the complaint in the Underlying Action alleges:

> The accident was caused by the negligence, carelessness, and violations of the Labor Laws of State of New York, including, but not limited to §200, §240 and §241(6) by the Defendant JCM, its agents, servants, employees, and/or licensees including contractors and subcontractors performing work at the subject location at the time of the accident and prior thereto, and in failing to provide Plaintiff with a safe place to work; in causing and/or permitting unsafe conditions to exist at the aforementioned construction/work site which constituted a danger, nuisance and menace to the safety of the Plaintiff; in causing and permitting hazardous and dangerous conditions to exist in violations of the law, and in failing to take those steps and measures necessary to protect the life of the Plaintiff in causing the Plaintiff to work and be employed in a hazardous place, under dangerous circumstances without the benefit of adequate and appropriate protection for his safety and welfare; in failing to construct, assure, equip, place, guard, arrange and/or maintain the construction/work site and the equipment thereat so as to give proper protection to the Plaintiff; in causing and allowing the Plaintiff to fall from an elevated workplace thereby sustaining serious and severe injuries; in failing to inspect and/or properly inspect the work site to see if it was safe and proper; in failing to provide the Plaintiff with safety devices so constructed to provide Plaintiff with proper protection and with a safe place to work; in failing to provide Plaintiff with a safety belt, harness or fall arrest system; in failing to provide nets or other fall protection; failing to provide proper illumination; in over loading the equipment beyond its capacity rating; filing [sic] to use counter weights or outriggers.

Dkt. 24-13 ¶ 9.

> Paragraph 25 of the complaint in the Underlying Action alleges:
>
> The accident was caused by the negligence, carelessness and violations of the Labor Laws of State of New York, including, but not limited to §200, §240 and §241(6) by the Defendant SCIAME, its agents, servants, employees, and/or licensees including contractors and subcontractors performing work at the subject location at the time of the accident and prior thereto, and in failing to provide Plaintiff with a safe place to work; in causing and/or permitting unsafe conditions to exist at the aforementioned construction/work site which constituted a danger, nuisance and menace to the safety of the Plaintiff; in causing and permitting hazardous and dangerous conditions to exist in violations of the law, and in failing to take those steps and measures necessary to protect the life of the Plaintiff in causing the Plaintiff to work and be employed in a hazardous place, under dangerous circumstances without the benefit of adequate and appropriate protection for his safety and welfare; in failing to construct, assure, equip, place, guard, arrange and/or maintain the construction/work site and the equipment thereat so as to give proper protection to the Plaintiff; in causing and allowing the Plaintiff to fall from an elevated workplace thereby sustaining serious and severe injuries; in failing to

> inspect and/or properly inspect the work site to see if it was safe and proper; in failing to provide the Plaintiff with safety devices so constructed to provide Plaintiff with proper protection and with a safe place to work; in failing to provide Plaintiff with a safety belt, harness or fall arrest system; in failing to provide nets or other fall protection; failing to provide proper illumination; in over loading the equipment beyond its capacity rating; filing [sic] to use counter weights or outriggers.

*Id.* ¶ 25.

One of Claimant's co-workers made a written statement as a witness in connection with the Underlying Action which was produced in discovery in that action. Dkt. No. 24-15 at 16. In the written statement, the co-worker witness attested that Claimant was injured while working at the Project site using a ladder that was Regulator's property and a drill that also was Regulator's property. *Id*. In relevant part, the co-worker witness swore:

> [Claimant] was using on a [sic] 8ft A-Frame Louisville ladder that was the property of Regulator Construction Corporation. . . . [Claimant] was using a hammer drill that was the property of Regulator Construction Corporation to drill holes through the form and into the concrete foundation when the drill bit got caught inside the foundation wall. [Claimant] pulled on the hammer drill, when it came loose [sic], it caused him to lose his balance and fall off the ladder. . . . There were no other contributing Factors to the accident other than the fact he pulled the drill out of the wall.

*Id*. at 16–17.

On October 17, 2019, Sciame and JCM served a third-party complaint in the Underlying Action against Regulator seeking defense and indemnification among other relief. Dkt. No. 23 ¶ 19. The third-party complaint alleges that Claimant was an employee of Regulator or a subcontractor of Regulator and working on the Project at the time of the accident, and that if Claimant sustained any damages or injuries as alleged by the complaint in the Underlying Action, those damages and/or injuries would have been caused in whole or in part by the recklessness, carelessness, negligence and/or other culpability of Regulator and/or its agents. Dkt. No. 25-1 ¶¶ 5, 16.

Travelers has provided and continues to provide a defense to Sciame and JCM in the Underlying Action. Dkt. No. 23 ¶ 20.

## IV. The Insurance Dispute

By letter dated November 1, 2018, Travelers tendered the claim to Axis by notifying Axis of Claimant's alleged accident and Axis's insurance obligations. *Id*. On January 15, 2019, Travelers forwarded the summons and complaint in the Underlying Action to Axis and reissued its tender. *Id.* ¶ 22. Travelers repeatedly followed up with Axis regarding the tender but never received a response. *Id.* ¶ 23.

## PROCEDURAL HISTORY

Travelers commenced this action by complaint filed on May 27, 2021. Dkt. No. 1. Travelers seeks a declaration that Axis has an obligation to defend and indemnify Sciame and JCM as additional insured in the Underlying Action and that the coverage provided to Sciame and JCM by the Axis Policy for the Underlying Action is primary. *Id.* ¶ 32. Travelers also seeks a declaration that the obligations of Travelers to Sciame and JCM in the Underlying Action are excess to proper exhaustion and full payment of the limits of the Axis Policy. *Id*. Additionally, Travelers seeks an award at law and in equity for recovery of all sums it has incurred and continues to incur in the defense of Sciame and JCM in the Underlying Action and costs for this action. *Id.* ¶ 33; *see also id.* at 8. Axis answered Travelers' complaint on August 12, 2021. Dkt. No. 11.

On April 8, 2022, Travelers filed this motion for partial summary judgment. Dkt. No. 21. Axis filed its memorandum of law in opposition to the motion on May 6, 2022, Dkt. No. 28, and Travelers filed its reply brief on May 20, 2022, Dkt. No. 32.

Travelers seeks an order declaring that: (1) Axis is obligated to defend Sciame and JCM in connection with the Underlying Action; (2) Axis's duty to defend Sciame and JCM is

8

connection with the Underlying Action is primary and non-contributory to any defense available to Sciame and/or JCM from Travelers with respect to the Underlying Action; and (3) Travelers' defense obligations toward Sciame and JCM are excess to those of Axis with respect to the Underlying Action. Dkt. No. 21 at 1–2. It also seeks an award in favor of Travelers against Axis for all sums Travelers has paid in defending Sciame and JCM in the Underlying Action. *Id*. at 2.

## LEGAL STANDARD

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).

In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). It may not rely on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.

9

1996) (internal citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," then summary judgment shall be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir. 1983).

## DISCUSSION

Travelers argues that the "additional insured" language of the Axis policy, the Sciame subcontract with Regulator, and the undisputed facts including the allegations in the Underlying Action and evidence provided to Axis establish that Axis has a duty to defend Sciame and JCM in connection with the actions in the Underlying Action. Dkt. No. 22 at 2. It also argues that Axis's duty to defend Sciame and JCM in connection with the Underlying Action is primary and non-contributory to any defense available to Sciame and/or JCM from Travelers with respect to the Underlying Action, and that Travelers' defense obligations toward Sciame and JCM are excess to those of Axis with respect to the Underlying Action. *Id.*

Axis responds that it has no present duty to defend Sciame and JCM in the Underlying Action on the grounds that the complaint in the Underlying Action does not allege that the Claimant's injuries were "caused, in whole or in part, by . . . Regulator's acts or omissions" or those acting under it, Dkt. No. 28 at 8, and that Travelers cannot rely upon the statement of the co-worker witness, the third-party complaint, or "extrinsic evidence" to impose on it a duty to defend, *id.* at 9, 11. Axis claims that "all the allegations of negligence, acts or omissions causing [Claimant's] alleged injuries are claimed to have been committed by Sciame and JCM." *Id.* at

10

14. It also argues that JCM cannot be considered to be an "Additional Insured" under the Axis policy because it had no privity of contract with Regulator. *Id.* at 16. In the alternative, Axis argues that Travelers' request for a declaration that Axis's policy is primary should be denied because Travelers "has not proffered an affidavit of a person with personal knowledge of the Travelers Policy sufficient to attest to its genuineness or completeness," and the reasonableness of defense costs presents fact questions not susceptible to summary judgment. *Id.* at 16–17.

I.    **In New York, Insurers Have a Broadly Construed Duty to Defend**

An entity seeking insured status has the burden to prove its entitlement to such coverage. *Consol. Edison of N.Y., Inc. v. Allstate Ins. Co.*, 74 N.E.2d 687, 690 (N.Y. 2002). New York law governs the interpretation of the insurance agreement in this case. Under New York law, "[a]n insurance agreement is subject to principles of contract interpretation." *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017) (quoting *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 80 (N.Y. 2015)). "As with the construction of contracts generally, 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.'" *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008) (quoting *White v. Continental Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007)). "[C]ourts should read a contract as a harmonious and integrated whole to determine and give effect to its purpose and intent." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017) (internal quotation marks omitted). "Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements." *Id.* at 748. "In that regard, a contract must be construed in a manner which gives

11

effect to each and every part, so as not to render any provision 'meaningless or without force or effect.'" *Id.* (quoting *Ronnen v. Ajax Elec. Motor Corp.*, 671 N.E.2d 534, 536 (N.Y. 1996)).

The operative language here is that contained in endorsement (CG 20 10 04 13) of the Axis Policy providing that Axis has a duty to defend an additional insured but "only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by [Regulator's] acts or omissions; or [t]he acts or omissions of those acting on [Regulator's] behalf in the performance of [Regulator's] ongoing operations for the additional insured(s) at the location(s) designated above." Dkt. No. 23 ¶ 7. There is no dispute that at least Sciame is an additional insured or that Claimant asserts claims for bodily injury against Sciame; nor is there a dispute that Regulator was engaged in ongoing operations at the Project. *Id.* ¶¶ 10–11. Axis argues, however, that the complaint in the Underlying Action does not allege liability "caused, in whole or in part, by" Regulator's actions. Dkt. No. 11 ¶ 50.

The New York Court of Appeals has held that "where an insurance policy is restricted to liability for any bodily injury 'caused, in whole or in part,' by the 'acts or omissions' of the named insured, the coverage applies to injury proximately caused by the named insured." *Burlington Ins. Co.*, 79 N.E.3d at 478. It is insufficient that "the insured's conduct be a causal link to the injury" or that "but for" causation apply. *Id.* at 481. It also is insufficient that liability "arise out of" the insured's conduct in the absence of the insured's negligence. *Id.* at 484. Thus, under such an endorsement, where the acts of the additional insured are the sole proximate cause of an injury, the additional insured is not entitled to coverage. *Id.* at 481. "[T]he language in the endorsement [i]s 'intended to provide coverage for an additional insured's vicarious or contributory negligence, and to prevent coverage for the additional insured's sole negligence.'"

12

*Hanover Ins. Co. v. Philadelphia Indemnity Ins. Co.*, 73 N.Y.S.3d 549, 550 (1st Dep't 2018) (quoting *Burlington Ins. Co.*, 79 N.E.3d at 485).

Moreover, in New York, an insurer has a duty to defend if there is a basis upon which it could eventually be held obligated to indemnify. "In New York, an insurer's duty to defend is 'exceedingly broad.'" *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, N.E.2d 1152, 1155 (N.Y. 2006)). "[A]n insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *Id.* The duty to defend has been described as a form of "litigation insurance." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1132 (N.Y. 2007). "An insurer may refuse to defend '*only if* it could be concluded as a matter of law that there is *no possible* factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (emphasis added) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)). "Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." *Euchner-USA, Inc.*, 754 F.3d at 141 (quoting *Brook Shopping Ctr. v. Liberty Mut. Ins. Co.*, 439 N.Y.S.2d 10, 12 (1st Dep't 1981)). The duty to defend applies in "poorly or incompletely pleaded cases as well as those artfully drafted." *U.S. Fid. & Guar. Co. v. Executive Ins. Co.*, 893 F.2d 517, 519 (2d Cir. 1990) (quoting *Ruder & Finn, Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 521 (N.Y. 1981)). "[I]f there is either a possible factual or legal basis on which the insurer might eventually be obligated to indemnify, the insurer has a duty to defend." *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323 (S.D.N.Y. 2020).

## II. There Is a Possibility That Claimant's Injuries Were Proximately Caused, in Whole or in Part, by Regulator's Acts or Omissions

The allegations of the complaint in the Underlying Action, as well as those set forth in the statement of the co-worker, give rise to a possible legal or factual basis upon which Axis may be required to indemnify. Claimant's injuries were not solely the result of Sciame or JCM's individual or collective negligence. From the Underlying Action complaint and, in particular, from the co-employee statement, the accident was at least partially caused by Regulator and/or those acting on its behalf. Dkt. No. 23 ¶ 7. The complaint in the Underlying Action does not "solely allege" that Claimant was injured while engaged in construction work for Structural Concrete Inc., language that would suggest "but for" or "arising under" causation. Dkt. No. 24-13 ¶¶ 17, 23. Instead, the complaint alleges that the accident was caused by "the negligence, carelessness and violations of the Labor Laws of the State of New York" by "Sciame and/or licenses including contractors and subcontractors performing work" at the Project who, among other violations, are liable in "causing and/or permitting unsafe conditions to exist" at the Project. *Id.* ¶ 25. The complaint also alleges that "Sciame and/or licenses including contractors and subcontractors performing work" at the Project "fail[ed]to take those steps and measures necessary to protect the life of the [Claimant]," failed to provide Claimant with proper protective equipment, failed to maintain equipment at the work site, failed to provide Claimant with proper safety devices and fall protection, and overloaded the equipment beyond capacity—conditions that all contributed to "causing and allowing [Claimant] to fall from an elevated workplace thereby sustaining serious and severe injuries." *Id*. However, it is undisputed that Claimant was working for and under the supervision of Regulator. There are facts supporting the conclusion that Regulator was responsible for Claimant's work space and equipment. Accordingly, if Claimant's injuries were the result of Sciame and/or its contractors and subcontractors'

14

negligence while performing work on the Project and failing to provide Claimant with a safe place to work, it follows that such negligence could have been that of Regulator—Sciame's contractor—and not of Sciame and JCM alone.

That conclusion is even more clearly supported by the witness co-worker's statement. His statement establishes that the accident was caused by the use of a drill provided by Regulator which resulted in Claimant falling off of a ladder provided by Regulator.  Dkt. No. 24-15 at 16–17.  He ascribes no responsibility to Sciame or to any other entity.  *Id*.  Thus, if there was negligence, then it is at least possible that such negligence was Regulator's and that Claimant's injuries were proximately caused, in whole or in part, by Regulator's negligence. [2]  As in *Charter Oak*, 462 F. Supp. 3d 317, and the cases it cites, a jury might ultimately conclude that the named insured was not negligent or that its negligence did not proximately cause Claimant's injury.  But Regulator purchased insurance to protect Sciame against the risk that it would be held liable on the basis of Regulator's negligence; at least Sciame is entitled to coverage for the defense costs reasonably necessary to protect against the risk that, because of such negligence, a jury might find it liable to Claimant.[3]

### III. New York Law Intentionally Permits Looking Beyond the Complaint's Four Corners to Determine Liability

Axis argues that the question of whether Sciame's liability could be proximately caused in whole or in part by the acts of Regulator must be determined from the four corners of the

---

[2] There is some ambiguity in the case law whether the duty to defend arises upon a finding that it is "possible" that the insurer will be liable for indemnification or only upon a finding that it is "reasonably possible." *Fitzpatrick*, 575 N.E.2d at 91, uses the language of "reasonable possibility," while the Second Circuit more recently in *CGS Indus., Inc.*, 720 F.3d at 82, used the language of "possibility."  The difference is immaterial here.  Defendant would have a duty to defend regardless whether the standard is "possibility" or "reasonable possibility."

[3] The Court discusses below the question whether JCM is entitled to coverage as an additional insured.

15

complaint in the Underlying Action alone and cannot rest even partially of information outside the complaint. It thus objects to the Court's consideration of the co-worker statement. However, that argument ignores the holding of *Fitzpatrick v. American Honda Motor Company*, 575 N.E.2d 90, 91 (N.Y. 1991), that "the insurer [is required] to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." As the New York Court of Appeals explained, "the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured." *Id.* "[A] contrary rule making the terms of the complaint controlling 'would allow the insurer to construct a formal fortress of the third party's pleadings . . . thereby successfully ignoring true but unpleaded facts within its knowledge that require it . . . to conduct the . . . insured's defense.'" *Id.* at 93 (quoting *Associated Indemn. Co. v. Insurance Co. of N. Am.*, 386 N.E.2d 529, 536 (Ill. App. Ct. 1979)). It also would have the "insured's right to a defense . . . depend solely on the allegations a third party chooses to put in the complaint [even when] the drafter of the pleading [is] unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurer's) interest to reveal them." *Id.* at 94; *see Charter Oak*, 462 F. Supp. 3d at 324. The ruling in *Fitzpatrick* cannot be cabined, as Axis would have it, to those cases where the extrinsic facts demonstrate the named insured's entitlement to coverage. The opinion's language and logic "requir[es] the insurer to provide a defense where, notwithstanding the complaint allegations, underlying facts made known to the insurer create a 'reasonable possibility that *the insured* may be held liable for some act or omission covered by the policy.'" *Fitzpatrick*, 595 N.E.2d at 95 (emphasis added) (quoting *Meyers & Sons Corp. v. Zurich Am. Ins. Group*, 545 N.E.2d 1206, 1208 (N.Y. 1989)). There is no reason why, if that

rule applies with respect to coverage for a named insured, it would not also apply to additional insureds on behalf of whom the named insured has purchased "litigation insurance."

Axis also argues that coverage for the additional insured here is barred by the holdings of the Court of Appeals in *Burlington Insurance* and the Appellate Division, First Department, in *Hanover Insurance Company*. Dkt. No. 28 at 8, 11–14. Those cases, however, do not support Axis. In *Burlington Insurance Company*, the court held that the additional insured was not entitled to be indemnified under an ISO endorsement nearly identical to the one at issue here because the named insured "was not at fault" for the injury that gave rise to the additional insured's liability and the claimant's injury was due to the additional insured's sole negligence. 79 N.E.3d at 484. Among other things, the additional insured admitted in internal memoranda that it had "sole responsibility for the accident." *Id.* at 480. In *Hanover Insurance Company*, likewise, the court concluded that the acts or omissions of the named insured were not a proximate cause of the injury giving rise to the potential for liability, and that "the sole proximate cause of the injury was the additional insured." 73 N.Y.S.3d at 588. Further, *M&M Realty of N.Y., LLC v. The Burlington Ins. Co.*, 2018 WL 3224090 (Sup. Ct. N.Y. Co. July 2, 2018), also cited by Axis, supports Travelers. The trial court held that there was no duty to defend because the underlying complaint did not allege that the acts or omissions of the named insured caused the claimant's injury and instead exclusively attributed the cause of the accident to the negligence of the additional insured. *Id.* at *5. However, on appeal, the Appellate Division, First Department, modified the Supreme Court's order and held that "the allegations of the underlying complaint and the known facts suggest[ed] a reasonable possibility of coverage, i.e., a reasonable possibility that the underlying injury was caused, in whole or in part, by [the named insured's] acts or omissions," citing to among other cases, the New York Court of

Appeals' decision in *Fitzpatrick*. *M & M Realty of New York, LLC v. Burlington Ins. Co.*, 95 N.Y.S.3d 178, 180 (1st Dep't 2019).

**IV.      Privity of Contract Is Not Necessary to Invoke an Insurer's Duty to Defend**

Plaintiff next argues that even if Sciame could be considered an additional insured and a duty to defend triggered on its behalf by Regulator's acts or omissions, Axis has no duty to defend JCM because JCM enjoys no privity of contract with Axis's named insured—Regulator. Regulator's agreement was with Sciame. It relies on the Second Circuit decision in *Cincinnati Insurance Company v. Harleysville Insurance Company*, 709 F. App'x 71, 73 (2d Cir. 2017), holding that where a policy contained a Privity Endorsement that required contractual privity for a party to be considered an additional insured "there must be a written agreement between the insured and the organization seeking coverage to add that organization as an additional insured." The language at issue in the Privity Endorsement provided additional insured coverage "when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." *Id.* at 73 n.1.

No rule of law prevents an insured from bargaining with their insurer for coverage of those on whose behalf the insured is doing work but with whom the insured enjoys no privity of contract. Regulator bargained for different additional insured language than that at issue in *Cincinnati Insurance Company*. Regulator bargained that Axis would provide additional insured coverage to "[a]ny person or organization where the Named Insured has agreed in a written contract or agreement to name as an additional insured provided that the contract or agreement was executed prior to the loss or occurrence." Dkt. No. 23 ¶ 7. That language does not include the Privity Endorsement. Prior to the loss or occurrence here, Regulator had agreed in a written contract and agreement "to provide defense and indemnification to Contractor [defined as Sciame], Owner [defined as JCM], and the other Indemnitees (who shall be designated as

18

additional insureds under the pertinent policy or policies of insurance on a primary and non-contributory basis)." *Id.* ¶ 11. Under the plain language of the Axis Policy, JCM is an additional insured. *See Starr Indem. & Liab. Co. v. Excelsior Ins. Co.*, 516 F. Supp. 3d 337, 341, 348–49 (S.D.N.Y. 2021) (stating that contract required subcontractor to obtain additional insured coverage for entities with whom it was not in contractual privity); *William Floyd School Dist. v. Maxner*, 892 N.Y.S.2d 115, 118 (2d Dep't 2009) (holding that insurer was obligated to provide coverage to school district which was not in privity with its insured where the contract signed by its insured required the insured to obtain insurance naming school district as an additional insured).

### V.    The Axis Policy Coverage Is Primary to the Travelers Policy Coverage

Finally, Axis argues that Travelers is not entitled to summary judgment on the question of whether coverage under the Axis Policy is primary to coverage available to Sciame and JCM under the Travelers Policy. Under New York law, "[w]here the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance clauses.'" *Sport Rock Int'l v. Am. Cas. Co.*, 878 N.Y.S.2d 339, 344 (1st Dep't 2009). Axis does not dispute that comparison of the "other insurance" clauses of the Axis and Travelers policies reveals that the Axis Policy is primary to the Travelers Policy with respect to the coverage available to Sciame and JCM. It argues, however, that summary judgment should be denied because there is no declaration or affidavit establishing the authenticity of the policies.

Axis's argument is without merit. Travelers' Rule 56.1 statement cites to the relevant policies and to the "other insurance" language in those policies, *see* Dkt. No. 23 ¶¶ 3, 8–9, and in its Counter-Statement and Statement of Additional Material Facts, Axis does not dispute that the

policies have the quoted language and does not raise any issue with the authenticity or admissibility of the policy language quoted, *see* Dkt. No. 29 ¶¶ 3, 8–9.  For purposes of summary judgment, the statements in Travelers' Rule 56.1 statement are therefore deemed admitted.  *See Colton v. N.Y. Div. of State Pol.*, 2017 WL 5508911, at *2 (N.D.N.Y. Feb. 8, 2017) ("The failure to properly controvert a supported statement of fact by pointing to admissible evidence contravening the movant's evidence results in the movant's statement being deemed admitted."); *see also Knight v. N.Y.C. Hous. Auth.*, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007) ("Pursuant to Local Civil Rule 56.1 Defendant's statements are deemed to be admitted where Plaintiff has failed to specifically controvert them with citations to the record.").[4]

## CONCLUSION

The motion for summary judgment as to liability is GRANTED.  The Court will hold a conference to discuss the schedule and procedures for an inquest.

The Clerk of Court is respectfully directed to close Dkt. No. 21.

SO ORDERED.

Dated: June 2, 2022
        New York, New York

                                                    _____
                                                    LEWIS J. LIMAN
                                                    United States District Judge

---

[4] The parties do not disagree that further proceedings are necessary to determine the precise amount of prior defense fees Axis owes to Travelers.  Dkt. No. 32 ¶ 8.